Case number 15-5155, United States Department of Justice v. Daniel Chapter One and James Fayho individually and as an officer of Daniel Chapter One appellant. Mr. Dunkel for the appellant, Mr. Letter for the appellate. May it please the court. My name is Stephen Dunkel and I represent appellates Daniel Chapter One and James Fayho. This morning I intend to address the first and second claims raised in the opening brief, starting with the claim that the district court abused its discretion by issuing an order which imposed a total ban on appellates selling supplements. The United States Supreme Court has approved covering acts outside of the unlawful acts in the FTC action. However, it's only supposed to extend to acts of the same type or class, which can then be anticipated in the future based on the unlawful conduct. This has been referred to as fencing in. In this case, appellate's contention is that, at most, fencing in would have properly included extending to other products or extending the marketing tactics at issue here to any product. Instead, the district court issued an order not allowing appellants to sell supplements altogether. Do you agree that if the district court had entered this order on May 24, 2012, as opposed to three years later, it would have been okay? No. Why not? It wouldn't have been okay in the sense that. Why couldn't the district court have said at that point there's been flagrant violation of court orders for years and I don't think a ban on advertising works, so I'm going to prohibit sale of this product altogether. That still would have been too expensive because it wouldn't have allowed for selling supplements, even where there's no health-related claims at all, and that was really the conduct at issue was the marketing based on cancer and tumor-related claims. Perhaps the court could have then said, well, that would then extend to all other health-related claims, but to just ban the lawful activity of selling supplements regardless of how they are marketed. Well, suppose that the order then had applied, had banned just a sale of any product for which there's a health claim. I think that wouldn't suffer from the same problem as the current order. Okay. And the problem, therefore, with the current order, I take it from your brief, is that there's no evidence that between May 24, 2012 and the time of the second order, there's no evidence of any further violations. Is that right? That is part of our claim. To what extent was the company in business then? I mean, was the company selling products during those couple of years? Yes. Is that in the record? Well, there is in the order itself a reference to what's on the website in terms of supplements making health-related claims as recently as March of 2015. I see. Not cancer-related claims. Okay, go ahead. There's not authority, though, for an order that's this broad, and what the government cites instead of appellate authority is district court stipulations where orders are issued because both parties agree to a global resolution of FTC claims in which the defendant decides they're going to close up shop as part of a negotiated disposition. Those stipulations, though, should not be authority to issue an order this broad in a contested matter that has the effect of banning an entire segment of lawful activity, which is selling supplements. The second point appellants intend to address this morning is Section 13B of the FTC Act and whether or not it allows for disgorgement. Appellants' position is that this court should follow the majority opinion in the Philip Morris case from 2005 and look at the text and structure of the statute, and in doing so it's demonstrated that it's limited to forward-looking injunctive relief and not backward-looking. What about the government's alternative argument that we can sustain this under 5L? That's not how the district court reached its decision in this case. Yeah, I know it isn't, but the case was brought under 5L, right? That was one of the bases for the lawsuit, and you don't argue anywhere that the standards are different or that the district court would have had to go through any different analysis under the alternative statute. That's true. So it's kind of harmless that he cited 13B. It doesn't really make any difference since, you know, you don't challenge it here. Well, the order wasn't issued under 5L. It was issued under 13B. The government brought a suit under the provision, and the government is arguing this remedy could have been sustained under 5L. You don't disagree with that. So unless this is, I mean, it looks like a case of harmless error, the district court citing 13B. It doesn't affect the result because you don't, you know, you don't. What's the matter with that argument? We didn't address 5L because it wasn't found under 5L. It was found under 13B. Okay, so that's your argument? Yes. Okay, but fine. But if we disagree with that because the government brought a suit under 5L, then you concede, I take it, that we could affirm on that ground. No, I think the district court would have had to have issued the order under 5L. No, I'm saying, you're missing my question, assuming we think all that's important is that the case was filed under 5L and that you haven't argued that the standards are any different under the two statutes. I would disagree with that conclusion. If the court were to come to that conclusion, then that would be correct. Okay. Did you want to talk about it? Well, go ahead. The reason the text guides us towards finding that it's a forward-looking remedy only is that it uses words such as an adjoining, temporary restraining order, permanent injunction, and that it contemplates applying those things in the present tense based on current, ongoing, or future violations rather than looking backwards and seeking remedies for things that happened in the past. Like the issue in Philip Morris, this text is forward-looking. But at the same time, in terms of the structure, there's a companion or a related provision here, 19B, which covers backwards-looking redress and specifically talks about if something's happened, then the commission may commence, which contains a statute of limitations, which is similar to the RICO criminal portion that was at issue in the Philip Morris case. Yeah, this being a different statute, I understand we don't have binding precedent as to the question with respect to this statute, but what are the precedents from other courts with respect to the... As is stated in the brief, there are several courts of appeals who have come to the conclusion that discouragement is allowed under 13B. Like 9, right? Yes. And none contrary? None to the contrary. Some of those decisions do predate the U.S. Supreme Court's decision in Megrig, which is cited in this court's Philip Morris opinion. There are some afterwards that don't come to that conclusion. There is more analysis in some of the opinions rather than others. I mean, it's almost an assumption in some of the opinions that because the sister courts of appeals have already come to that conclusion that it must be the case. What appellants are asking for here is that this court use the same analysis as in the Philip Morris case to analyze both the text and structure of the statute. And in doing so, like in the Megrig case, because you're dealing with an elaborate provision, it would be improper to look at 13B, which is narrowly focused on forward-looking conduct, and ignore 19B, which specifically deals with past conduct and to find that we can infer or imply additional equitable authority under 13B. If there's no further questions, I'll reserve. Okay. Thank you. May it please the Court. I'm Douglas Sletter from the United States Department of Justice. With me at council table is Molly Silfen, also from the Department of Justice, and Joel Marcus Kern from the Federal Trade Commission. We're here urging that the court affirm the judgment and going directly to what Judge Tatel was asking. Although we believe there was absolutely no error in what the district court, what Judge Sullivan did, it is available to this court to affirm under 5L. It was specifically listed in the complaint, and it is mentioned at various points in Judge Sullivan's decision. In fact, Judge Sullivan relied on 5L for the civil penalty that he imposed. One thing, too, I may have misheard my fellow counsel here, but I'm not sure, but I think I want to correct something. The FTC order did cover not just the four products, but it covered all dietary supplements, and that's at pages 289 and 90 of the joint appendix. So the FTC order was already brought. It didn't bar any sales, but it covered all dietary supplements, not just the four that were particularly egregious. The other point, again, and I think it was Judge Tatel you asked, one of the things that Judge Sullivan relied on is at page 315 of the joint appendix. There was continuing conduct after the contempt order was purged. It was as recent as March 2015. Judge Sullivan cites to that the defendants were continuing to make unsubstantiated health claims well after they purged the contempt, but they continued to engage in this type of deceptive conduct. And Judge Sullivan specifically points that out and relies on that in issuing the order. And where is that, JA what? That is at JA 315. I think it maybe goes over into 316, but he gives a citation to defendants' website and notes the date when. So just for humor me for a minute, suppose there was no evidence at all of continuing violations of the order after the, I'm looking for the date, after the May 24, 2012. Suppose there had been no, suppose after that date when the district court found they had purged themselves of the violation of the previous orders, right? Suppose they had just been marketing and nothing deceptive. Could the district court, what was it, three years later, two and a half years later? Yes. Have expanded the order to a total ban on sales? Yes, Your Honor. Why? And remember, by the way, I know you're aware, but let me just emphasize that the standard here is abusive discretion. I totally understand that. Yeah. Why? Because the defendants over a period of several years violated orders of this court, of the district court, and of the FTC. Right. I got that. And did so in an area where there is extreme danger to the public. Let me focus the question. Yes. As counsel, I think, effectively conceded in my questioning that had this order been issued on May 24th, is that the date? I just have memories. You know what date we're talking about. Yes, exactly. Had the ban been issued on that date, there wouldn't be any problem at all about the authority of the district court to do it. My only question is the district court having not done that on May 24th and having instead just prohibited, let's just keep it really simple, prohibits deceptive advertising. For the next three years, there's no deceptive advertising at all. But then the district court enters an order. It says, look, up until May 24, there was serious violations of our order. So now, three years later, I'm going to ban sales altogether. Could the district court have done that? I still think that would not have been abusive discretion had the district court gone through and pointed out. But there had been several years of constant and continuing violations of orders of this court, the district court, and the FTC, and that we're dealing with something that is dietary supplements area. It is so prone to this type of possible deceptive. But even though there hasn't been any, they've been obeying all the rules for three years. It would have been harder, Your Honor. But you don't think it's a hard case because of what the district court said at Joint Appendix 315? Exactly, Your Honor. Is 315, is that the district court's opinion on the preliminary injunction? No, Your Honor, it's on the permanent injunction. Just one moment. What exactly did he say there that leads you to think there are continuing violations? What exactly did he say there? He says, if I may read, 315, undoubtedly defendant's dietary supplement marketing involves deliberate deceptive strategies that are easily adaptable or transferable to other products. The evidence in this case shows that in addition to the claims that the products cure cancer, the defendants also make health-related representations about their other products. And then he cites to their website, last visited March 12, 2015. And then he says, in order to ensure enforcement, et cetera, the court adopts enhanced compliance monitoring provisions recommended by the United States. So the violation there on the website is making a health-related claim? Yes, Your Honor. They're claiming that it can help support healthy liver, heart, blood triglyceride levels. It may assist in fat loss, muscle health, enhance the effectiveness of antioxidants, et cetera. And there's no, absolutely no support that it does any of these things, that the products do any of these things. Can you give me that JA slide again? JA 315, Your Honor. Thank you. And then, as I say, I think the discussion continues slightly on to page 316, where Judge Sullivan goes through, saying, gives a little more explanation of support for why he's doing this. Of current, of current? No, the only citation to the current is the website. Correct, that's correct, Your Honor. Cites a website. Their website, yes. Yes, Your Honor. Which shows selling products and claiming a health benefit for them. Yes, Your Honor. And, indeed, it further was, this gentle and nourishing fiber also helps support healthy cholesterol levels and a healthy heart and gallbladder. And, again, there's no scientific support for any of this. Okay, thanks. The last, unless the Court has questions, the last thing I just wanted to note is, my fellow counsel noted that some of the decisions here are, by other circuits, are before the Megrig decision by the Supreme Court in 1996. But Megrig is so clearly distinguishable because there, first of all, you had, that was a private action authorized by the statute under RCRA. So the Supreme Court importer has made clear that that's a different kettle of fish. And, second, the key there for the Supreme Court's analysis, Justice O'Connor's analysis, was when you combine RCRA and CERCLA, the combination of the two demonstrates that Congress did not intend these types of remedies. The key thing here is, fellow counsel mentioned 19B, which was passed several years after this section at issue here. In 19E, Congress said what we do in 19B is not meant to affect the remedies or provisions, et cetera, of any other statutory provisions. So Congress, in clear text, is saying we don't mean 19, section 19B, to have any impact whatsoever on what remedies, et cetera, the FTC can already obtain. All right. If there are no further questions. Okay, thank you. Thank you very much, Your Honor. I guess Mr. Dunkel had how much time? Okay, go ahead. And would you start by responding to what Mr. Letter said about the website that's cited at Joint Appendix 315? Yes. So, as a point of clarification, and I will get to that, but the order of the FTC was not a ban on selling all supplements. It did cover the covered products plus substantially similar health-related program services or products or any other covered product. Question about the website. Okay. And the reason that that's important, though, is because at the time this website was accessed, it did cover related products and it banned claims based on curing any type of tumors or cancer. And therefore what? And therefore they were not in violation of the order at that point. Why? Because this website, this claim didn't talk about cancer? It didn't talk about cancer or tumors. It talked about heart disease, gallbladder disease.  Cholesterol. So your client was free to make false claims about other medical problems, right? That's your point? No, my point is that in order trying to stop that would have meant saying no health-related claims, not in order saying you can't sell supplements at all. But see, this is what bothers me. Once there's some evidence, I thought your argument was after May 24th there were no violations and therefore there was no justification for a total ban. But we see here now that there are violations. And this is equity, right? It's abuse of discretion. And the court, the district court made a judgment, which we review for abuse of discretion, that the simple ban on advertising wasn't sufficient any longer. So it imposed a complete ban. Now why would that be an abuse of discretion? Because... Tell me why. Abuse of discretion. An abuse of discretion because there had been that period of compliance under the actual order. If the court believed that a broader order was necessary to prevent... What about the advertising on this website? What about the sales on this website? It wasn't making a tumor or cancer claim. Okay, so your health case turns on it not being tumor or cancer, right? No, not... That's what Judge Randolph asked you. As far as whether or not it might be justified to do a total ban on supplements, I do think it's significant that they weren't currently violating the actual order in place at that time. Okay. Anything else? I took up your time. Was there something else you wanted to add? Just briefly, on the Megrig case, that involved RCRA, which is also a... I'm sorry, on the Philip Morris... To respond to the Megrig point, Philip Morris also involved RICO, which is a public statute, and nevertheless the court applied the analysis that it did and found that it did not allow for backward-looking relief. Okay. Thank you. Thank you. Case is submitted.
judges: Tatel, Sentelle, Randolph